IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VISHAL BIRSINGH,** | : | No. 4:25cv2317 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **ACE HIGH INVESTMENTS, LLP,** | : | |
| United Kingdom limited liability | : | |
| partnership; **LITTLE WHEEL LLC,** | : | |
| New Jersey limited liability company; | : | |
| **JACK ETHERINGTON,** managing | : | |
| member of both Ace High | : | |
| Investments, LLP and Little Wheel | : | |
| LLC; **HENRY A. Andrews,** partner at | : | |
| Kramon & Graham, P.A.; AND **LEE** | : | |
| **DAVID VARTAN** partner at Chiesa | : | |
| Shahinian & Giantomasi PC, | : | |
| **Defendants** | : | |

## **MEMORANDUM ORDER**

Before the court is a *pro se ex parte* motion for temporary restraining order ("TRO") filed by Plaintiff Vishal Birsingh against various defendants.[1] Upon consideration of Birsingh's submission, and for the reasons outlined below, plaintiff's motion will be denied.[2]

---

[1] Counsel for Defendant Lee David Vartan entered his appearance on January 6, 2026. Birsingh failed to explain defendants' involvement in this case or allege any specific wrongdoing.

[2] Birsingh's motion appears to be generated by Artificial Intelligence.

Birsingh's motion for TRO is not a model of clarity. The motion is largely conclusory and is not accompanied by a supporting brief nor does it include developed legal arguments. Instead, Birsingh relies almost entirely on attached exhibits. Accordingly, the court will construe plaintiff's requests based on the materials submitted.

Birsingh's motion seeks *ex parte* relief under Rule 65(b) of the Federal Rules of Civil Procedure to preserve traceable funds and prevent their imminent dissipation. (Doc. 8 at 3). Birsingh vaguely alleges that defendants engaged in fraudulent conduct and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (Id. at 7).

According to Birsingh, defendants initiated an Automated Clearing House ("ACH") debit in the amount of $13,092.77 on September 24, 2025. (Id. at 8). In support, Birsingh attached a complaint filed by Defendant Ace High Investments, LLP ("Ace High") in the Montgomery County Circuit Court, Maryland. (Doc. 8-1, Ex. A, Compl. ¶¶ 1-36).[3]

---

[3] Ace High's complaint advances breach of contract and unjust enrichment claims against Birsingh. Birsingh's motion for TRO does not challenge the allegations contained in the complaint.

Notably, by seeking a TRO, Birsingh asks this court to interfere with a pending state action in Maryland. This court is barred from doing so under the Younger doctrine. "To promote comity between the national and state governments," the Younger abstention doctrine "requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings." Malhan v. Sec'y U.S. Dep't of State, 938 F.3d 453, 461 (3d Cir. 2019).

According to Ace High's complaint, Ace High provides independent contractors with proprietary casino wagering strategies and initial capital to use at approved online casinos in certain states, in exchange for a share of the resulting profits. Attached to that complaint was a backing agreement ("Backing Agreement") that Ace High and Birsingh entered into on August 15, 2025. (Doc. 8-1, Ex. 1).

Under the Backing Agreement, Ace High transferred funds (the "Staking Sum") into a bank account opened by Birsingh for the purpose of receiving the Staking Sum ("Staking Sum Account"). (Doc. 8-1, Ex. 1, Backing Agreement ¶¶ 1, 2). The agreement required Birsingh to allow Ace High to monitor the Staking Sum Account. (Id. ¶ 2). Section 4 of the Backing Agreement provides that the Staking Sum, together with any net profits earned from gambling and any subsequent deposits made by Ace High would be used exclusively by Birsingh to play casino games at regulated online casinos while he was physically present in the States of Michigan, New Jersey, Pennsylvania, or West Virginia. (Id. ¶ 4). Additionally, Section 3 of the Backing Agreement provides that at all times, Birsingh holds only bare legal title to the Staking Sum, and under no circumstances is entitled to receive, retain, or use those funds except as expressly permitted in the agreement. (Id. ¶ 3).

Another attachment to Ace High's complaint reflects that on August 19, 2025, Birsingh executed an ACH debit agreement (the "Debit Agreement") that authorizes Ace High to debit the Staking Sum Account. (Doc. 8-1, Ex. 3).

Ace High alleged in its complaint that, on September 23, 2025, Birsingh threatened to disclose Ace High's proprietary and confidential information unless Ace High acceded to his demands, including payment of an unspecified sum. (Doc. 8-1, Ex. A, Compl. ¶ 14).  Ace High attached email correspondence from Birsingh outlining his threats and conditions. (Id., Ex. 4).

On September 24, 2025, and pursuant to the Debit and Backing Agreements, Ace High allegedly requested that Birsingh return $13,092.77 of the Staking Sum via ACH debit. (Id., Ex. A, Compl. ¶ 15). It is alleged that Birsingh did not return the funds and submitted a stop-payment request to the bank in violation of the agreements to prevent the bank from processing Ace High's debit. (Id. ¶ 18).[4]  Birsingh allegedly made multiple withdrawals from the Staking Sum Account and used the funds for personal expenses. (Id. ¶19).  Per Ace High, Birsingh withdrew over $35,000 and has not returned those funds. (Id. ¶ 23).  Exhibit D, on which Birsingh bases his request for TRO, reflects that between September 25, 2025 and October 21, 2025, Birsingh made multiple

---

[4] Exhibit D, on which Birsingh relies, reflects that a $30.00 "Stop Payment Fee" was processed on September 24, 2025.

withdrawals from the Staking Sum Account to cover personal expenses (food, phone payments, etc.). (Doc. 8-2, Ex. D, at ECF p. 23).

Notwithstanding Ace High's allegations in its complaint, Birsingh now seeks a TRO to freeze the Staking Sum Account to prevent further dissipation of funds. Specifically, Birsingh requests: 1) preservation of traceable funds identified in Exhibit D; 2) a sworn accounting by Defendants Henry A. Andrews and Lee David Vartan identifying each financial institution that received the funds at issue; 3) transactional records; 4) a hearing; and 5) freezing of accounts containing funds traceable to the transfers identified in Exhibit D. (Doc. 8 at 3).[5]

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks and citation omitted). "[A] temporary restraining order is a stay put, equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 273 (3d Cir. 2002) (internal quotation marks and citation omitted).

---

[5] Birsingh also requests that the court order preservation of records and "Carve-Outs: Payroll, utilities, rent, taxes with 48-hour notice to Plaintiff." (Doc. 8 at 3).

A motion for TRO should be granted only if plaintiff establishes the following: (1) likelihood of success on the merits; (2) likelihood of irreparable harm to the movant in the absence of relief; (3) balance of the harms between the plaintiff on the one hand and the defendants on the other; and (4) the public interest. Osorio-Martinez v. Att'y Gen., 893 F.3d 153, 178 (3d Cir. 2018) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (quotation marks omitted). When a party moves for temporary injunctive relief *ex parte*, it must meet an even more rigorous standard. As the Supreme Court observed "*[e]x parte* temporary restraining orders are no doubt necessary in certain circumstances ... but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 438-39 (1974) (footnotes omitted).

Birsingh fails to establish the irreparable harm factor required for granting a TRO. Accordingly, the court focuses solely on the irreparable harm analysis below as a plaintiff must satisfy all four factors to succeed in moving for a TRO. NutraSweet Co. v. Vit-Mars Enters., Inc., 176 F.3d 151, 153 (3d Cir. 1999) ("A

plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate.").[6]

"In general, to show irreparable harm a plaintiff must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.' " Acierno v. New Castle Cnty., 40 F.3d 645, 653 (3d Cir. 1994) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989)). This typically means that economic injuries alone cannot be a sufficient basis for a court to issue a TRO, because they are by their very nature, remunerable. See Frank's GMC Truck Ctr. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988). Only in such instances where a harm occurs for which "money cannot atone," may a court find irreparable harm. Acierno, 40 F.3d at 653 (quoting A. O. Smith Corp. v. F. T. C., 530 F.2d 515, 525 (3d Cir. 1976)).

Based on the record, Birsingh voluntarily entered into the Debit and Backing Agreements with Ace High and agreed to grant Ace High access to the Staking Sum Account. Under those agreements, Birsingh retains only bare legal title to the Staking Sum and is not permitted to retain or use the funds for personal expenses.

---

[6] For brevity, the court will not address the remaining elements required for a TRO. On a related note, the factors to consider whether to grant a TRO or a preliminary injunction under Rule 65 of the Federal Rule of Procedure are the same. See Osorio-Martinez, 893 F.3d at 178.

7

Birsingh's submissions further fail to show that defendants initiated an ACH debit of $13,092.77 on September 24, 2025. To the contrary, the record reflects that Birsingh himself withdrew funds from the Staking Sum Account. Moreover, by Birsingh's own admission, the account balance was $0.00 as of October 23, 2025. (See Doc. 8-2, Ex. D, at 26). In the absence of any more recent statement, the court concludes that no funds remain in the Staking Sum Account, rendering a TRO unnecessary.

It is thus **ORDERED** that:

1) Birsingh's emergency motion for a TRO, (Doc. 8), is **DENIED** as of **January 29, 2026**; and

2) This matter is reassigned to United States Magistrate Judge Sean A. Camoni.

Date: **1/29/2026**

        *s/ Julia K. Munley*
**JUDGE JULIA K. MUNLEY**
**United States District Court**