## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VISHAL BIRSINGH, | : | NO. 4:25-CV-02317 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (CAMONI, M.J.) |
| LITTLE WHEEL, LLC, *et. al.* | : | |
| Defendants. | : | |

## <u>MEMORANDUM OPINION</u>

The Plaintiff, Vishal Birsingh, proceeding *pro se*, brought this action seeking treble damages under Title 18, United States Code, Section 1964(c), the Racketeer Influenced and Corrupt Organizations Act (RICO), along with claims under Pennsylvania state law, alleging that the Defendants engaged in a pattern of racketeering activity by recruiting Birsingh into an illegal gambling business. Amended Complaint, doc. 10. Defendants Lee David Vartan, Henry Andrews, and Little Wheel LLC moved to dismiss the Amended Complaint. Docs. 15, 28, 33. Because Birsingh fails to state any plausible claims, the Court will grant the Defendants' motions to dismiss.

## I.   BACKGROUND[1]

### A.   Factual Background

In 2025, Birsingh applied to Defendant Little Wheel LLC's online job posting for a "secret casino game tester" position. Doc. 10 at 6. Birsingh was hired, signing a contract with Defendant Ace High Investments LLP and its manager, Defendant Jack Etherington. *See* Backing Agreement, doc. 10-3 at 1, 8; doc. 10 at 5.[2]

Under that contract, Birsingh agreed to partake in online casino gambling in Pennsylvania, among other states, by using Ace High Investment's money (the "Staking Sum") and abiding by its gambling strategies. Doc. 10-3 at 1-2. To receive and use the Staking Sum, Birsingh opened a Bank of America account and provided access to Etherington. *See id.* doc. 10 at 6. The Defendants deposited the $12,543.42 Staking Sum into Birsingh's bank account. *Id.* As part of the contract, Birsingh agreed to return the Staking Sum to Ace High Investments and

---

[1] In considering this motion to dismiss, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] The Court references the Backing Agreement throughout the opinion as it is "a copy of a written instrument that is an exhibit to a pleading [which] is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

authorized the company to electronically debit his bank account. *See* doc. 10-4 at 2.

One month into Birsingh's online casino player role, the Defendants withdrew $1,215 from that account. *Id.* A few days later, the Defendants attempted an additional withdrawal of $13,092.77, which Bank of America blocked. *Id.* In response, Birsingh sent the Defendants an email demanding that the Defendants cease all activities involving Birsingh's bank account and fully disclose misrepresentations allegedly contained in the Backing Agreement. *Id.*; doc. 10-9 at 2. As Birsingh sees it, the Defendants misrepresented the employment purpose under the Backing Agreement by omitting the Defendants' "scheme to exploit new player bonuses across sixteen (16) Pennsylvania online casinos." Doc. 10-9 at 2. He alleges that the Defendants' use of those new-player bonuses permanently disqualified him from $15,000 to $20,000 in promotional value. *See* doc. 10 at 6.

Finally, Birsingh alleges that the Defendants filed a lawsuit against him in Maryland, seeking return of $37,000 in Birsingh's winnings and to extort him for their enterprise. *See id.* at 6-7.[3]

## B.   Procedural History

On December 4, 2025, Birsingh commenced this action with the filing of a Complaint and exhibits. Docs. 1, 1-1 through 1-15.[4] On February 2, 2026, Birsingh filed the operative Amended Complaint against Defendants Ace High Investments, LLP, Henry Andrews, Jack Etherington, Little Wheel LLC, and Lee David Vartan, bringing two federal claims under RICO statutes and six state claims: (1) 18 U.S.C. § 1962(c); (2) 18 U.S.C. § 1962(d); (3) Pennsylvania Corrupt Organizations Act; (4) Fraud; (5) Conversion; (6) Abuse of Process; (7) Pennsylvania Unfair Trade Practices Consumer Protection Law (UTPCPL); and (8) Civil Conspiracy. *See* Doc. 10 at 10-17.

---

[3] Indeed, Birsingh filed an *ex parte* emergency motion for a temporary restraining order that Judge Munley found would impermissibly interfere with that pending state action in violation of the *Younger* abstention doctrine. Doc. 9 at 2 n.3.

[4] All of Birsingh's *pro se* filings, including the Complaint and Amended Complaint, appear likely to have been created by or with a generative artificial intelligence tool.

Defendants Vartan, Andrews, and Little Wheel moved to dismiss (docs. 15, 28, 33), and the parties filed their respective briefs. Docs. 21-22, 30-32, 37-39. The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, including entry of final judgment. Doc. 36.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified).

A district court must conduct a three-step analysis when considering the sufficiency of a complaint under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the

plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555. Third, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211, quoting *Iqbal*, 556 U.S. at 679. A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210, quoting *Iqbal*, 556 U.S. at 678. On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A complaint filed by a *pro se* litigant is to be liberally construed and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Nevertheless, "pro se litigants still must allege sufficient facts in their

complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). And pro se litigants "must abide by the same rules that apply to all other litigants."  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021), quoting *Mala*, 704 F.3d at 244-45.

## III.  DISCUSSION

Birsingh brings eight claims against the Defendants. *See* doc. 10 at 10-17.[5] The Court will begin with the federal RICO claims, which all of the moving Defendants address. *See* Def.-Vartan's Br., doc. 21 at 9-18; Def.-Andrews's Br., doc. 30 at 8-13; Def.-Little Wheel's Br., doc. 37 at 12-20. But first, the Court must address the Plaintiff's apparent use of generative artificial intelligence ("GAI") and his troubling reliance on fabricated, or "hallucinated" legal authority.

Throughout his briefs in opposition, Birsingh repeatedly alleges that the defendants have admitted in Maryland court filings to "felony proxy gambling" in violation of 4 Pa. C.S. § 13A03, and citing to "*Glick v. White Brook Farms*, 170 F.3d 386, 390 (3d Cir. 1999)" in support of that

---

[5] The Court does not address Count III of the Amended Complaint, which Birsingh has voluntarily dismissed as to all defendants, conceding that 18 Pa. C.S. § 911 does not provide a private right of action. *See* Pl.'s Br., doc. 38 at 3.

assertion. *See, e.g.*, doc. 22 at 2. First, that case does not exist;  Birsingh (or his GAI tool) has apparently invented it. The Court could not locate any case by that name in the Third Circuit or elsewhere, and the pin cite provided lands in the middle of an unrelated case. Birsingh further cites to "*Glick*, 170 F3d at 390" in support of his argument that "a judicial admission is conclusive and cannot be contradicted by later argument." *Id.* No part of the case actually reported at that pin cite location addresses judicial admissions or proxy gambling in any way. Strike one.

Second, the Pennsylvania statute cited by Birsingh has nothing to do with so-called "proxy gambling," and the Court could identify no other provision of Pennsylvania law that does. 4 Pa. C.S. § 13A03 addresses the promulgation of temporary gaming regulations and does not create any felony violations whatsoever. Again, Birsingh (or his GAI tool) has apparently invented a state felony, upon which he bases a substantial portion of the asserted validity of his claims. "In this variety of hallucination, the AI-model appears to have provided the plaintiff with a legal doctrine that he wanted to exist without it actually existing." *Marble v. O'Malley*, No. 26-40, 2026 U.S. Dist. LEXIS 92256, at *1 (M.D. Pa. Apr. 27, 2026). Strike two.

None of the defendants have raised this issue, but Birsingh is nonetheless admonished that his *pro se* status will not shield him from sanctions if these types of misrepresentations to the Court persist. Even a *pro se* party is responsible for the accuracy of their filings, and, if the Plaintiff chooses to use GAI for drafting or conducting research, he remains responsible for verifying the accuracy of the contents of all of his filings. With two strikes against him, Birsingh is warned to proceed with caution.

### A.    18 U.S.C. § 1962(c), (d)—RICO and RICO Conspiracy

Returning to substantive issues, the Court finds that the Amended Complaint fails to plausibly state RICO claims under § 1962(c) or RICO conspiracy under § 1962(d) because Birsingh: (1) fails to allege RICO standing under 18 U.S.C. § 1964(c); and (2) fails to adequately plead the requisite elements of a RICO claim under § 1962(c).

> 1.    *Birsingh fails to establish RICO standing under 18 U.S.C. § 1964(c).*

A plaintiff seeking recovery under RICO must satisfy the standing criterion set forth in § 1964(c). *In re Schering Plough Corp.*, 678 F.3d 235, 246 (3d Cir. 2012). Section 1964(c) confers standing upon "any person injured in his business or property by reason of a violation of section 1962

of this chapter[.]" *Id.*, quoting 18 U.S.C. § 1964(c). The Court of Appeals for the Third Circuit has required RICO plaintiffs to "make two related but analytically distinct threshold showings" to establish RICO standing: "(1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Id.*, quoting *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).

Defendants Vartan and Little Wheel argue that Birsingh has not plausibly alleged a RICO injury and has not pleaded causal connections between their actions and the alleged RICO losses. *See* doc. 21 at 14-17; doc. 37 at 16-20. They are correct.

First, the Defendants contend that Birsingh has no cognizable loss because he "has received more money from the Defendants than they allegedly took from him." Doc. 21 at 15; doc. 37 at 21. A showing of RICO injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest. *Anderson v. Ayling*, 396 F.3d 265, 271 (3d Cir. 2005), citing *Maio*, 221 F.3d at 483. "[T]he injury to business or property element can be satisfied by allegations and proof of actual monetary loss, i.e., an out-of-pocket loss." *Maio*, 221 F.3d at 483. Equally

important, "an injury that is speculative or contingent on future events does not confer RICO standing." *Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 424 (E.D. Pa. 2014).

Here, Birsingh cannot allege a concrete financial loss because he has none. Doc. 10 at 6. Birsingh alleges that the Defendants' withdrawal of $1,215 from his bank account is a RICO loss. *See id.* at 6-7.[6] It is not. The Defendants' withdrawal of $1,215 did not result in an out-of-pocket loss because, as Birsingh's pleadings acknowledge, the Defendants deposited $12,543.42 into his bank account solely for Birsingh to use in online gambling as part of a contractual agreement. *Id.* at 6. When the Defendants withdrew part of the Staking Sum they gave to Birsingh, he lost nothing, and, in fact, still gained over $11,000. That is not an out-of-pocket loss. *See Aliperio v. Bank of Am., N.A.*, 764 F. App'x 236,

---

[6] Birsingh originally alleged four financial losses as RICO injuries: (1) the Defendants' withdrawal of $1,215 from his bank account; (2) the Defendants' attempted withdrawal of $13,092.77; (3) $15,000 to $20,000 loss in promotional value from Pennsylvania-licensed online casinos; and (4) a $725 process service fees incurred for initiating service on Defendant Ace. *See* doc. 10 at 6-7. He has since abandoned all but the Defendant's withdrawal of $1,215 as a RICO injury. *See* doc. 38 at 3 ("The damages I press for RICO standing are limited to the $1,215 unauthorized ACH debit from my Bank of America account").

238-39 (3d Cir. 2019) (concluding that even though a plaintiff made monthly payments on a mortgage, those payments did not count as an actual monetary loss for RICO purposes because they were consistent with the terms of the parties' loan agreement)[7]; *Sambade v. Barberi Constr. LLC*, No. 11-7589, 2016 WL 11891359, at *5 (D.N.J. Feb. 18, 2016) (finding no RICO injury where a plaintiff lost nothing).

Second, assuming *arguendo* that Birsingh plausibly alleged a RICO injury, he still fails to allege causation. "RICO plaintiffs must demonstrate that their injuries were the direct result of the defendants' predicate acts." *Brown v. Access Midstream Partners, L.P.*, 141 F. Supp. 3d 323, 335 (M.D. Pa. 2015). A plaintiff is not entitled to recover for injuries solely attributable to third-party conduct or unrelated to suspect RICO transactions. *Lester v. Percudani*, 556 F. Supp. 2d 473, at 486 (M.D. Pa. 2008).

As to the moving Defendants, Birsingh pleads very few factual allegations. *See* doc. 10 at 6-7. Against Defendants Vartan and Andrews, Birsingh alleges that the two attorneys "assisted in structuring the

---

[7] *Aliperio* is especially relevant here, where Birsingh expressly authorized Ace High Investments to make withdrawals from the Bank of America account at issue. Doc. 10-4 at 2.

foundational Backing and Debit Agreements . . ., drafted and filed the Maryland complaint . . . ."[8] *Id.* Against Defendant Little Wheel, Birsingh alleges only that it created a job posting on an online website. *See id.* at 6. These allegations alone do not raise a reasonable inference that the moving Defendants' actions caused Birsingh's alleged injury, the withdrawal of $1,215 from his bank account. Further, none of these alleged facts set forth any RICO predicate acts or allege that Birsingh's loss was caused by a RICO predicate act. *Brown*, 141 F. Supp. 3d at 335.

Taking Birsingh's allegations as true, Defendants Vartan and Andrews drafted a contract and filed a lawsuit in Maryland state court. *See* doc. 10 at 6-7. Birsingh fails to support an inference that these routine legal services that Defendants Vartan and Andrews rendered on behalf of their client caused his RICO injury or constitute a RICO predicate act. *See Pelullo v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 131 F. App'x 864, 867 (3d Cir. 2005) (finding plaintiffs' allegation, that the attorney-defendants subjected them to civil litigation, among other

---

[8] Andrews argues that these sparse factual allegations do not suffice to establish personal jurisdiction over him in this Court. Doc. 30 at 26-30. While Andrews's argument is more compelling than Birsingh's conclusory response (doc. 32 at 4), the Court need not reach this issue because the case will be dismissed on the merits.

things, does not support an inference of a nexus to the plaintiffs' alleged RICO injuries); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 933 (3d Cir. 1999) ("[T]his causation chain is much too speculative and attenuated to support a RICO claim."). And Defendant Little Wheel's action, in posting a job that Birsingh applied for, is equally speculative and attenuated from Birsingh's alleged RICO injury. The Court, therefore, finds that Birsingh's RICO claim under § 1962(c) fails because he cannot meet RICO standing under 18 U.S.C. § 1964(c).[9]

---

[9] The Court does not dismiss Birsingh's RICO conspiracy claim, brought under § 1962(d), for lack of RICO standing, because a plaintiff can technically state a RICO conspiracy claim without satisfying § 1964(c) if a plaintiff can otherwise establish standing and states a viable RICO claim under § 1962(d). *See Rehkop v. Berwick Healthcare Corp.*, 95 F.3d 285, 289-90 (3d Cir. 1996) (distinguishing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) to find that a plaintiff who could not pursue a § 1962(c) for lack of RICO standing under § 1964(c) could still allege a violation under § 1962(d)). Regardless, as explained below, the Court finds that, on the merits, Birsingh fails to raise a plausible RICO claim under § 1962(c) and thus necessarily fails to state a claim under § 1962(d).

    *2.    Birsingh fails to state a plausible RICO claim under § 1962(c)*

The moving Defendants contend that Birsingh has failed to sufficiently plead proper RICO claims because he has failed to allege: (1) an enterprise; and (2) a pattern of racketeering. *See* doc. 21 at 12-13; doc. 30 at 9-13; doc. 37 at 12-15.

RICO creates a private civil cause of action that allows any person injured in his business or property caused by a violation of § 1962 to sue in federal district court. *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 698 (3d Cir. 2018). The statute makes it unlawful for any person in the employ of an "enterprise" to "participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Malibu Media, LLC v. Doe*, 238 F. Supp. 3d 638, 646 (M.D. Pa. 2017), citing *Brown*, 141 F. Supp. 3d at 334.

To adequately plead a RICO claim under § 1962(c), a plaintiff must allege, in addition to the RICO standing elements under § 1964(c), that the defendants as persons were employed by or associated with an enterprise affecting interstate commerce, and that they participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity consisting of at least two acts of racketeering

activity. *Rose v. Bartle*, 871 F.2d 331, 358 (3d Cir. 1989), citing 18 U.S.C. §§ 1962(c), 1961(1), (3)-(5). In short, a plaintiff must allege: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (citation modified).

The Court concludes that Birsingh has failed to plead that the Defendants participated in an enterprise under the operation or management test and has failed to plead sufficient factual allegations to establish two predicate acts to constitute a pattern of racketeering activity.

### a.    Operation or Management Test

Defendant Andrews argues that under the "operation or management" test to determine the existence of an enterprise, he is not subject to RICO liability because his role in the alleged enterprise did not extend beyond rendering typical legal functions as a counsel of record in the Maryland state court breach of contract action. *See* doc. 30 at 11-12. He is correct.

The operation or management test requires that a defendant must knowingly engage in directing the enterprise's affairs through a pattern

of racketeering activity. *Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993). That means that a defendant must "knowingly further the illegal aims of the enterprise by carrying out the directives of those in control." *United States v. Parise,* 159 F.3d 790, 796 (3d Cir.1998). Under this test, not even action involving merely some degree of decision making constitutes participation in the affairs of an enterprise. *Univ. of Md.*, 996 F.2d at 1538-39.

Here, Birsingh alleges that the Defendants run an enterprise which operates "to illegally profit from proxy gambling using U.S. residents as mules and to extort victims who refuse to surrender winnings." Doc. 10 at 8. Birsingh, however, has not alleged that Defendants Andrews, Vartan, or Little Wheel had any part in operating or managing the affairs of the alleged enterprise. As to Defendant Little Wheel, Birsingh only alleges that it made an online job posting and held funds and executed transactions. *See id.* at 6, 8. As to Defendants Andrews and Vartan, Birsingh alleges only that they drafted a contract and filed a lawsuit. *See id.* at 8. None of those allegations come close to meeting the operation or management test because they amount to no more than performing generic legal and other services. *See Univ. of Md.*, 996 F.2d at 1539-40

(finding no operation or management in an enterprise where the plaintiff merely alleged that a defendant-accounting firm's services were important and indispensable to an insurance company under RICO; "Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result."); *Nolan v. Galaxy Scientific Corp.*, 269 F. Supp. 2d 635, 643 (E.D. Pa. 2003) ("This court is unwilling to expand RICO liability for mail fraud in such a dramatic fashion as to include litigation papers and pre-litigation statements of legal position."); *see also Paul S. Mullin & Assocs., Inc. v. Bassett*, 632 F. Supp. 532, 540 (D. Del. 1986) ("The Court finds absurd plaintiffs' apparent suggestion that a lawyer's act in posting a letter which states a client's legal position in a dispute can constitute mail fraud.").

### b.   Pattern of Racketeering—RICO Predicate Acts

Birsingh has alleged four RICO predicate acts, only two of which may relate, if at all, to the moving Defendants based on the facts alleged in the Amended Complaint. *See* doc. 10 at 9.[10]  Birsingh alleges broadly

---

[10] Birsingh also alleges violations of 18 U.S.C. §§ 1955 (Illegal Gambling Business) and 1956 (Money Laundering) as RICO predicates, pleading

that the Defendants engaged in wire fraud by sending thirty emails directing wagering and transfers, and in mail fraud by "service of Maryland lawsuit." *Id.* The RICO statute defines racketeering by setting forth an enumerated list of criminal violations that constitute predicate acts for purposes of RICO. *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002). Among these predicate acts are mail fraud and wire fraud, the predicate acts Birsingh has alleged here. *See* 18 U.S.C. § 1961(a).

Where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b). *See Warden*, 288 F.3d at 114. Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead an instance of mail or wire fraud, a plaintiff must allege a scheme to defraud in which a defendant "causes" the mails or wires to be used in furtherance of the scheme, together with

---

that the Defendants as a whole moved illegal proceeds through U.S. banks and conducted proxy operation across state lines. Doc. 10 at 9. Because Birsingh pleads no factual allegations that support a reasonable inference that the moving Defendants specifically committed these predicate violations, the Court confines the analysis to mail fraud and wire fraud, which, when the Amended Complaint is construed liberally, may arguably relate to the factual allegations against the moving Defendants.

an allegation of specific intent to commit fraud. *Westlake Plastic Co. v. O'Donnell*, 182 F.R.D. 165, 169 (E.D. Pa. 1998).

Here, Birsingh fails to plead sufficient factual allegations to meet Rule 9(b) requirements. The Amended Complaint contains only a vague allegation that the Defendants engaged in wire fraud by sending "30 emails and electronic instructions directing wagering and transfers," and that they engaged in mail fraud by filing a lawsuit. Doc. 10 at 9. Birsingh's conclusory fraud allegations "[do] not state clearly how these or any other communications were false or misleading, or how they contributed to the alleged fraudulent scheme." *Warden*, 288 F.3d at 114. Further, serving litigation documents alone cannot constitute mail fraud. *See Nolan*, 269 F. Supp. 2d at 643 ("This court is unwilling to expand RICO liability for mail fraud in such a dramatic fashion as to include litigation papers and pre-litigation statements of legal position.").

### 3.    *RICO Conspiracy—18 U.S.C. § 1962(d)*

Finally, Birsingh's RICO conspiracy claim under § 1962(d) necessarily fails because, as explained, he does not state a cognizable claim under § 1962(c). *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d

1153, 1191 (3d Cir. 1993). Accordingly, the Court will dismiss Counts I and II of the Amended Complaint.

## B.  State Law Claims

The five remaining state law claims in the Amended Complaint are: (1) Count IV—Fraud; (2) Count V—Conversion; (3) Count VI—Abuse of Process; (4) Count VII—Pennsylvania UTPCPL; and (5) Count VIII—Civil Conspiracy. *See* Doc. 10 at 12-17. Because Birsingh fails to plead sufficient factual allegations, the Court will dismiss the state law claims.[11]

### 1.  Fraud

To establish common law fraud, a plaintiff must prove: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." *Perkins v. State Farm Ins. Co.*, 589 F. Supp. 2d 559,

---

[11] Dismissal is further warranted because this Court has discretion to decline to exercise supplemental jurisdiction over state law claims having dismissed all claims over which original jurisdiction exists, and should do so "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Sarpolis v. Tereshko*, 625 F. App'x 594, 599 (3d Cir. 2016). Here, no such considerations are present.

567-68 (M.D. Pa. 2008), citing *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. Ct. 2006). Under both federal and Pennsylvania rules, fraud must be pleaded with particularity. *Id.*, citing Fed. R. Civ. P. 9(b); Pa. R. Civ. P. 1019(b).

Here, Count IV of the Amended Complaint merely states that the Defendants, as a whole, "misrepresented the 'game testing' position as legitimate employment," that the "Plaintiff justifiably relied by providing bank access and participating," and that the "Defendants knew the representations were false." Doc. 10 at 13. These allegations fall far short of the pleading requirements for fraud. *See City of Harrisburg v. Bradford Trust Co.*, 621 F. Supp. 463, 475 (M.D. Pa. 1985) ("To satisfy the relatively broad requirements . . ., the Complaint should specify precisely what statements were made in which oral representations; the time and place of each such statement and the person responsible for it; the content of each statement and the manner in which it misled the plaintiff; and what the defendant obtained as a consequence of the fraud."). Birsingh fails to allege with particularity what the Defendants knew were false about their purported misrepresentations, let alone what those misrepresentations were. Accordingly, Count IV of the

Amended Complaint will be dismissed. *See Pell v. Weinstein*, 759 F. Supp. 1107, 1119 (M.D. Pa. 1991) (finding that a plaintiff failed to satisfy Rule 9(b) requirement where the plaintiff simply stated that certain financial statements were false and that the accountant-defendants knew they were false); *Perkins*, 589 F. Supp. 2d at 568 (dismissing a Pennsylvania fraud claim because a plaintiff failed to state with particularity the alleged misrepresentations).

### 2.    *Conversion*

Under Pennsylvania law, conversion is the "deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Universal Premium Acceptance Corp. v. York Bank & Tr. Co.*, 69 F.3d 695, 704 (3d Cir. 1995); *see Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 878 (Pa. Super. Ct. 1997) (defining same). Here, Birsingh alleges that "Defendants wrongfully exercised dominion over Plaintiff's $1,215." Doc. 10 at 14. But, as Birsingh references in the attachment to the Amended Complaint, he authorized the "return of Staking Sum via ACH (ACH Debit)" to Ace High Investments, negating any claim that the defendants took the sum at issue without consent. *See* doc. 10-4 at 2.

Further, he does not plead factual allegations that support a reasonable inference that the $1,215 actually belonged to him. Because Birsingh fails to raise a plausible inference that he owned the $1,215 and that he did not consent to its withdrawal, Count V of the Amended Complaint will be dismissed. *See Kia v. Imaging Scis. Intern., Inc.*, 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010) (finding that a conversion claim failed because there is nothing in the record to show that a plaintiff had any property interest in the money allegedly converted by the defendants).

### 3.   *Abuse of Process*

In Count VI of the Amended Complaint, Birsingh alleges a claim of abuse of process, stating that the "Maryland lawsuit was filed to extort repayment of illegal winnings." Doc. 10 at 15. To determine whether a plaintiff has pleaded abuse of process, a court asks whether there has been a "perversion" of the process, or, whether a legal process has been used "as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 305 (3d Cir. 2003), citing *McGee v. Feege*, 535 A.2d 1020, 1026 (Pa. 1987). The point of liability under an abuse of process claim is reached when "the utilization of the procedure for the purpose

Page 24 of 30

for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure." *Id.* at 307 (citation omitted). Only at that point could the legal process be considered to have been perverted. *Id.*

Here, Birsingh's vague and conclusory allegation that Defendants Andrews and Vartan filed a state lawsuit to extort repayment of illegal winnings fails to state a plausible abuse of process claim. Birsingh does not assert any other factual allegations to support a reasonable inference that Defendants Andrews and Vartan filed a state lawsuit to harass or cause direct injury to Birsingh. Because the Amended Complaint "does not contain the necessary allegations that legal processes were not employed to achieve their intended purposes," the Court will dismiss Count VI of the Amended Complaint. *Gen. Refractories Co.*, 337 F.3d at 309 (dismissing an abuse of process claim where a plaintiff failed to allege a specific purpose for an attorney-defendant's use of legal processes); *see also Giordano v. Claudio*, 714 F. Supp. 2d 508, 533-34 (E.D. Pa. 2010) (dismissing an abuse of process claim that referred only to the initiation of a lawsuit and not to other discrete portions such as a subpoena or a discovery request).

### 4. *Pennsylvania UTPCPL*

The Pennsylvania UTPCPL prohibits "unfair methods of competition" and "unfair or deceptive acts or practices" in the conduct of trade or commerce. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008), citing 73 Pa. C.S. § 201-3. Section 201-2(4) "lists specific unfair methods of competition and unfair or deceptive acts or practices, and includes a catchall provision." *Id.* "The statute creates a private right of action in persons upon whom unfair methods of competition and unfair or deceptive acts or practices are employed and who[,] as a result, sustain an ascertainable loss." *Id.*, citing 73 Pa. Cons. Stat. § 201-9.2.

Because he fails to specify any of the deceptive acts listed in the statute, in order to state a claim under the catch-all provision, Birsingh must plead justifiable reliance on the alleged deceptive conduct. *Danganan v. Guardian Prot. Servs.*, 813 F. App'x 769, 772-73 (3d Cir. 2020), citing *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 201-02 (Pa. 2007). Even construed liberally, the Amended Complaint fails to state any deceptive conduct or justifiable reliance. First, Birsingh's bare, conclusory assertion that the Defendants "engaged in deceptive conduct in recruitment and bonus hijacking" does not suffice. Doc. 10 at 16; *Morse*

*v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

Moreover, Birsingh failed to plead justifiable reliance because he has not alleged that the Defendants' deception induced him to enter into the Backing Agreement. *See Hunt*, 538 F.3d at 227 (plaintiff failed to allege justifiable reliance where they did not allege deception-induced detrimental behavior). Neither does he allege that he would not have entered into the Backing Agreement had he known of the alleged deceptive behavior. *See Seplow v. Closing Pro, Inc.*, 717 F. Supp. 3d 427, 436 (E.D. Pa. 2024) ("For pleading purposes, the complaint must establish that, had the plaintiff known of the deceptive conduct, he would have acted differently."). Because Birsingh has failed to allege deceptive conduct or justifiable reliance on that conduct, the Court will dismiss Count VII of the Amended Complaint.

### 5.    *Civil Conspiracy*

In Pennsylvania, "to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act

by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories Co.*, 337 F.3d at 309, citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. 1997). A claim for civil conspiracy must be based on a free-standing cause of action. *Giordano*, 714 F. Supp. 2d at 534; *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000) (citation modified) ("Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.").

Birsingh's only allegation against the Defendants in Count VIII is that they "agreed to commit unlawful acts with overt acts in furtherance." Doc. 10 at 17. More is required. The Amended Complaint, even construed liberally, fails to allege sufficient facts to state a plausible civil conspiracy claim. *See Gen. Refractories Co.*, 337 F.3d at 313 (affirming grant of motion to dismiss civil conspiracy claim because the complaint did not contain allegations that attorney-defendants acted outside of their scope of representation, or any allegations from which a reasonable inference could be made). And because Birsingh has failed to state any other

independent causes of action, "there can be no cause of action for civil conspiracy." *McKeeman*, 751 A.2d at 660.

## IV.    LEAVE TO AMEND

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the plaintiff leave to amend the complaint unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The Court finds that granting Birsingh leave to file a second amended complaint would be futile. Birsingh has already had "two chances to tell his story . . . giving him further leave to amend would be futile." *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019). And, based on the facts alleged in the complaint and the exhibits attached thereto, it is clear that amendment would be futile. None of the claims are amenable to correction or amendment, because they are undermined by the very facts and exhibits submitted by Birsingh and are based on fundamental misunderstandings of the law.

Notably, the central pillar of Birsingh's federal claims is a theory of criminal "proxy gambling" premised entirely on fabricated legal

authorities. Therefore, the complaint will be dismissed with prejudice as to the moving defendants and without leave to amend.

## V.    CONCLUSION

Accordingly, the Court will grant Defendants' motions to dismiss (docs. 15, 28, 33) in their entirety and with prejudice. An appropriate order follows.

Date: July 10, 2026                         s/*Sean A. Camoni*
                                            Sean A. Camoni
                                            United States Magistrate Judge